UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

KALI COATES     Plaintiff

v.     Civil Action No. 3:20-cv-44-RGJ-RSE

OFFICER TYLER GELNETT, ET AL.     Defendants

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Plaintiff Kali Coates ("Coates") alleges violations of state law and seeks relief under 42 U.S.C. § 1983 for alleged violations of her rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution against Defendants Louisville-Jefferson County Metropolitan Government ("Louisville Metro") and Officer Tyler Gelnett ("Gelnett"). [DE 1-2 at 7-15]. The Court previously dismissed Count III of Plaintiff's Complaint against Louisville Metro "to the extent it is based on state law." [DE 5 at 31]. Defendant Louisville Metro now moves to dismiss the claim against it in Count III to the extent it is based on federal law. [DE 8]. Plaintiff did not respond and the time for doing so has passed.[1] The matter is ripe. For the reasons below, the motion to dismiss [DE 8] is **GRANTED**.

---

[1] When a plaintiff fails to respond, "the district court may deem the plaintiff to have waived opposition to the motion." *Scott v. Tennessee*, 787 F.2d 382, 1989 WL 72470, at \*2 (6th Cir. 1989); *see Humphrey v. U.S. Attorney General's Office*, 279 F. App'x 328, 331 (6th Cir. 2008) (recognizing that a party's lack of response to motion or argument is grounds for district court to assume waiver and grant the motion). Plaintiff filed [DE 12] and the Court granted [DE 14] an extension of time to respond to Defendant's Motion. After Plaintiff's counsel did not respond for five months, the Court issued a show cause order. [DE 23]. Although Plaintiff's counsel responded to the show cause order [DE 25], he again chose not to respond to the Motion even after the passage of three additional months. And this is not the first time that Plaintiff's counsel has failed to respond—he also did not respond to Defendant's first motion to dismiss. [DE 5]. Nonetheless, despite Plaintiff's counsel's failure to respond, the Court will consider the merits of Defendant's Motion. *See Mooneyham v. Equifax Info. Servs., LLC*, 99 F. Supp. 3d 720, 723 n.1 (W.D. Ky 2015) ("Uncontested motions to dismiss, however, do not relieve the court of all analysis").

## I.     BACKGROUND

On January 5, 2019, Defendant Gelnett stopped Plaintiff for a traffic violation. [DE 1-2 at 11]. After asking Plaintiff for her driver's license, Defendant Gelnett "requested that she exit her vehicle" and allegedly "began to search [her] by inappropriately placing his hands in her crotch area, and . . . down in between her underwear." *Id.* Defendant Gelnett then allegedly "escorted her to the back of her vehicle" where "he again began to search her person . . . by groping her buttocks and vagina to the point that another officer intervened and admonished him." *Id.*

Plaintiff sued Defendants in Jefferson County Circuit Court. [DE 1-2]. Defendants removed the case to this Court. [DE 1].

## II.     STANDARD

Federal Rule of Civil Procedure 12(b)(6) instructs that a court must dismiss a complaint if the complaint "fail[s] to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). When considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted). "But the district court need not accept a bare assertion of legal conclusions." *Tackett v. M & G Polymers*, *USA, LLC,* 561 F.3d 478, 488 (6th Cir. 2009) (citation omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to

relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "A complaint will be dismissed . . . if no law supports the claims made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief." *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561–64).

### III. DISCUSSION

Plaintiff appears to allege in Count III that Defendant Louisville Metro had a "policy" or "custom" of negligent hiring, retaining, training, and supervising:

**COUNT III**
**NEGLIGENT HIRING, TRAINING, AND SUPERVISING**

34. Plaintiff re-alleges and incorporates by reference each of the allegations contained in paragraphs 1 through 33 of this Complaint.

35. That this Plaintiff had *constitutionally and statutorily protected rights*, and, further she had rights *explicit*, and *implicit* in both the *statutes* and *public policy* of this *Commonwealth* and *these United States*, to be free from assault, sexual assault, and unreasonable searches and seizures.

36. That while engaging in the misconduct complained of herein, Defendant Officer Tyler Gelnett, was acting as the Defendant City's actual, apparent, or ostensible agent, in the furtherance of its business and economic activities, and within the course and scope of his employment with Defendant City.

37. The Defendant City either authorized or ratified, or should have anticipated and taken steps to prevent, the misconduct of its agents complained of herein.

38. That upon information and belief, at all times relevant hereto *Defendant City knew or should have known of the propensities of Defendant Officer Tyler Gelnett to perpetrate sexual misconduct of the kind complained herein, Defendant City was negligent in hiring, training, supervising, and retaining Defendant Officer Tyler Gelnett, and therefore Defendant City is liable to the Plaintiff for her compensatory damages complained of herein*, and also for exemplary damages according to the laws and public policy of this Commonwealth.

[DE 1-2 at 14-15 (emphasis added)].

Based on the italicized language, the Court interprets Count III of Plaintiff's Complaint as alleging negligent hiring, retaining, training, and supervision under both state and federal law. As noted, the Court previously dismissed the claim against Defendant Louisville Metro in Count III to the extent it is based on state law. [DE 8]. To the extent Plaintiff is also alleging a claim against Defendant Louisville Metro in Count III based on federal "constitutionally and statutorily protected rights," the Court construes it as a municipal liability claim under § 1983. *See D'Ambrosio v. Marino*, 747 F.3d 378, 386 (6th Cir. 2014); *Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir. 1990) ("Section 1983 . . . creates a right of action for the vindication of constitutional guarantees found elsewhere"); *Gonzales v. City of Fostoria*, No. 3:13 CV 796, 2014 WL 99114, at *2 (N.D. Ohio Jan. 9, 2014) ("Because the plaintiffs are alleging that several of their constitutional rights were violated, their use of § 1983 as the mechanism to vindicate their rights is proper").

**A.     Municipal Liability**

A plaintiff asserting a municipal liability claim under § 1983 must allege that the federal violation occurred because of a municipal policy or custom. *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978). To properly assert a municipal liability claim, a plaintiff must sufficiently allege: 1) the existence of an illegal official policy or legislative enactment; 2) that an official with final decision-making authority ratified illegal actions; 3) the existence of a policy of inadequate hiring, retaining, training, or supervision; or 4) the existence of a custom of tolerance of or acquiescence to federal rights violations. *See Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013).

1. <u>Negligent Hiring and Retaining</u>

To state a § 1983 claim for a municipality's negligent hiring and retaining of a particular employee, the plaintiff must allege "that the decision to hire or retain the employee 'reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision.'" *Wilson v. Trumbull Cty. Dep't of Job & Family Servs.*, No. 4:12 CV 02163, 2013 WL 5820276, at *12 (N.D. Ohio Oct. 29, 2013)  (quoting *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 411 (1997)).  Put differently, a plaintiff must allege that "*this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff." *Bryan Cty.*, 520 U.S. at 412 (emphasis in original).

Defendant contends that "Plaintiff plead [sic] no factual allegations suggesting that, in hiring Officer Gelnett Metro Government was deliberately indifferent to the risk that it would violate Plaintiff's constitutional rights." [DE 8-1 at 41].  Defendant also contends that "[t]here are no allegations that Officer Gelnett has any history of committing sexual misconduct to offer support for such an allegation.  In the absence of any factual allegations suggesting deliberate indifference, Plaintiff has clearly failed to state a plausible claim against Metro Government for negligent hiring." *Id.*  Plaintiff did not respond.

Plaintiff has not alleged that Defendant Louisville Metro was deliberately indifferent to the risk that Defendant Gelnett would violate Plaintiff's constitutional rights.  Plaintiff has also not alleged that adequate scrutiny of Gelnett's background would have led a reasonable policymaker to conclude that the plainly obvious consequence of hiring him would be the deprivation of a constitutional right. *See Bryan Cty.,* 520 U.S. at 411.  In fact, other than a vague and factually unsupported reference to Defendant Gelnett's "propensit[y] . . . to perpetuate sexual misconduct," Plaintiff has alleged nothing about his background (*e.g.*, prior instances of sexual misconduct) in

the Complaint. *Id.* at 412 ("A finding of culpability simply cannot depend on the mere probability that any officer inadequately screened will inflict any constitutional injury . . . The connection between the background of the particular applicant and the specific constitutional violation alleged must be strong"); *see Sweat v. Butler*, 90 F. Supp. 3d 773, 784 (W.D. Tenn. 2015) ("[C]ourts in this circuit have dismissed [negligent hiring] claims under Rule 12(b)(6) where the complaint contained no allegations about an officer's background") (citation and internal quotation marks omitted); *Mitchell v. Grasha,* No. 1:12CV2181, 2013 WL 2552040, at *4 (N.D.Ohio June 10, 2013) ("There is no allegation of any 'red flags' or warning signs in the officers' background or personnel files, which 'would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be a deprivation of a third party's federally protected right'") (citations omitted); *Johnson v. Metro. Gov't of Nashville & Davidson Cty.*, No. 3:10-0589, 2010 WL 3619790, at *3 (M.D. Tenn. Sept. 13, 2010) ("There is no factual underpinning from which a conclusion plausibly could be drawn that there was anything in the backgrounds of these police officers to alert Metro that hiring them would result in the deprivation of a citizen's constitutional rights, and that Metro was deliberately indifferent to the risk posed").

Nor has Plaintiff alleged that policymakers were aware of Defendant Gelnett's illegal conduct and ignored it. *See M.S. ex rel. Hall v. Susquehanna Twp. Sch. Dist.*, 43 F. Supp. 3d 412, 425 (M.D. Pa. 2014) (dismissing negligent retention claim where "Plaintiffs have not alleged . . . that policymakers were aware of Sharkey and M. S.'s relationship while her constitutional harm was ongoing. Thus, any failure to discipline him or terminate his employment is not the 'moving force' behind the constitutional violation and cannot be imputed to the District"). For these reasons, the Court finds that Plaintiff has failed to state a claim for municipal liability against Defendant Louisville Metro under a theory of negligent hiring and retaining.

  2. <u>Negligent Training and Supervision</u>

To state a § 1983 claim for a municipality's negligent training and supervision, the plaintiff must allege: 1) "the training or supervision was inadequate for the tasks performed"; 2) "the inadequacy was the result of the municipality's deliberate indifference"; and 3) "the inadequacy was closely related to or actually caused the injury." *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006). As to the municipality's "deliberate indifference," the plaintiff must either allege: 1) "prior instances of unconstitutional conduct demonstrating that the [municipality] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury"; or 2) "[A] single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation." *Fisher v. Harden,* 398 F.3d 837, 849 (6th Cir. 2005); *Bryan Cty.*, 520 U.S. at 409.

Defendant Louisville Metro contends that Plaintiff has failed to state a negligent training and supervision claim: "The facts alleged in the Complaint do not establish that the training provided to LMPD officers was deficient or that Metro Government acted with deliberate indifference to Plaintiff's rights through the training provided to Officer Gelnett. Consequently, Plaintiff cannot succeed on a §1983 claim based on the theory of failure to train." [DE 8-1 at 42]. Defendant Louisville Metro also contends: "Plaintiff alleged no facts whatsoever to indicate that Metro Government either has a policy or custom of failing to ensure adequate supervision of its officers or that it acted deliberately indifferent to Plaintiff's constitutional rights through a lack of proper supervision over Officer Gelnett." *Id.* at 42-43. Plaintiff did not respond.

Paragraph 38 of Count III consists of legal conclusions "devoid of . . . factual enhancement." *Iqbal*, 556 U.S. at 678; [DE 1-2 at 14 ("Defendant City was negligent in hiring,

training, supervising, and retaining Defendant Officer Tyler Gelnett"); *See Wilson*, 2013 WL 3776743 at *10 (finding plaintiff failed to state negligent training claim where plaintiff only alleged that "Defendant, Trumbull County, either on its own or through its agents, negligently failed to hire, properly train, and supervise its employees in the proper legal means of taking an adult from their home")  (internal quotation marks omitted);  *Cooper v. Rhea Cty., Tenn.*, 302 F.R.D. 195, 201 (E.D. Tenn. 2014) (finding plaintiff failed to state negligent training and supervision claim where plaintiff only alleged that "[t]he customs, practices, and policies of the Rhea County Sheriff's Department, as promulgated by Defendant, Rhea County, Tennessee through Defendant, Mike Neal, facilitated a substantial risk of serious harm and injury to Plaintiff, and Defendant, Mike Neal, failed to properly train and supervise the Arresting Officers so as to prevent the serious bodily injuries suffered by the Plaintiff").

Indeed, paragraphs 34–38 do not even recite the elements of a negligent training and supervision claim.  Plaintiff has not asserted, even in a conclusory fashion, that LMPD officers had a pattern of committing similar unconstitutional violations.  *See Okolo v. Metro. Gov't of Nashville*, 892 F. Supp. 2d 931, 944 (M.D. Tenn. 2012) (dismissing negligent training claim where plaintiff "[pled] no facts and cite[d] no prior instances of unconstitutional conduct to support his conclusory allegation that Metro was aware of a history of illegal arrests, much less that they ignored them");  *Spainhoward v. White Cty., Tennessee*, 421 F. Supp. 3d 524, 544 (M.D. Tenn. 2019) (dismissing negligent training claim where plaintiff did "not set forth *any* facts that there were prior instances of similar misconduct to show that White County was on notice that its training and supervision with respect to vehicular pursuits or the use of force was deficient") (emphasis in original); *Smith v. City of Morganfield, Kentucky*, No. 4:13CV-00101-JHM, 2015 WL 6697249, at *4 (W.D. Ky. Nov. 3, 2015)  (dismissing negligent training claim where "Plaintiff

submit[ed] no evidence regarding the inadequacy of the Morganfield Police Department's training program" and did not "cite to any deficiencies in the training received by the three individual officers or how their lack of training led to his injury").

Plaintiff has likewise failed to sufficiently state a claim based on a single violation. Nowhere in her Complaint does Plaintiff allege "a complete failure to train [LMDC officers], training that is so reckless or grossly negligent that future . . . misconduct is almost inevitable or would properly be characterized as substantially certain to result." *Harvey v. Campbell Cty., Tenn.*, 453 F. App'x 557, 567 (6th Cir. 2011) (quoting *Hays v. Jefferson County,* 668 F.2d 869, 874 (6th Cir.1982) (internal quotation marks omitted); *see Minick v. Metro. Gov't of Nashville,* No. 3:12–CV–0524, 2014 WL 3817116, at *2 (M.D.Tenn. Aug. 4, 2014) ("In numerous cases, courts . . . have found that boilerplate allegations premised on a single incident of alleged police brutality—*i.e.,* the incident that caused the plaintiff's injury—are insufficient to state a municipal liability claim, thereby justifying dismissal under Rule 12(b)(6)"). Nor has she sufficiently alleged that Louisville Metro's deliberate indifference "created a training regimen so deficient that it was the actual *cause* of" Defendant Gelnett's unconstitutional conduct. *Harvey*, 453 F. App'x at 568 (emphasis in original). Finally, without a well-pled allegation of deliberate indifference or other unconstitutional conduct by supervisors, Plaintiff's negligent supervision claim must fail as well. *See Amerson v. Waterford Twp.*, 562 F. App'x 484, 492 (6th Cir. 2014) ("Amerson only presents evidence that Waterford Township failed to conduct performance evaluations. This alone is not enough to show deliberate indifference, especially in the absence of evidence of a pattern of excessive force, a record of officers going unpunished for excessive force, or other circumstances tending to show that Waterford Township was aware or could have been aware that Stechly was prone to unwarranted application of force"). For these reasons, the Court finds that Plaintiff has

failed to state a claim for municipal liability against Louisville Metro under a theory of negligent training and supervision.

### IV.     CONCLUSION

For the reasons above, **IT IS ORDERED** that:

1) Defendant Louisville Metro's Motion to Dismiss [DE 8] is **GRANTED** and the claim asserted against Louisville Metro in Count 3 of the Complaint is **DISMISSED WITH PREJUDICE** to the extent it is based on federal law.

2)  Because there are no remaining claims against Defendant Louisville Metro, Defendant Louisville Metro is **DISMISSED WITH PREJUDICE** and **TERMINATED** from this case.

cc:     counsel of record